UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HOSPITAL SERVICE DISTRICT NO. 1 OF TERREBONNE PARISH | * | CIVIL ACTION |
| | * | NO. 22-689 |
| VERSUS | | |
| | * | SECTION "P" (2) |
| HARTFORD FIRE INSURANCE COMPANY | * | |

## ORDER AND REASONS

Before me is Plaintiff Hospital Service District No. 1 of Terrebonne Parish's Motion to Reconsider, Alter or Amend Judgment. ECF No. 60. Defendant Hartford Fire Insurance Company timely filed an Opposition Memorandum, and Plaintiff timely filed a Reply Memorandum. ECF Nos. 65, 66. In accordance with the parties' unanimous consent, the Honorable Darrel Papillion referred the summary judgment motions to the undersigned magistrate judge for resolution pursuant to 28 U.S.C. § 636(c). ECF No. 56. After the parties agreed that this motion should likewise be resolved by the undersigned, Judge Papillion issued the referral. ECF Nos. 62, 63.

Having considered the record, submissions and arguments of counsel, and applicable law, Plaintiff's Motion to Reconsider, Alter or Amend Judgment is DENIED for the reasons herein.

## I. BACKGROUND

Plaintiff Hospital Service District No. 1 of Terrebonne Parish ("the Hospital") filed suit to recover COVID-related business losses and for extra-contractual damages against its insurer Hartford Fire Insurance Company ("Hartford"). ECF No. 1. Hartford moved for summary judgment on the basis that the Hospital's losses suffered as a result of the Louisiana Department of Health's ("LDH") statewide orders are not covered losses for three reasons: (1) the Communicable Disease ("CD") contamination provision only applies when the LDH issues a

1

cessation order in response to an outbreak at the particular facility, not simply a statewide order with prophylactic restrictions that impacts an insured; (2) the Hospital had no cases of hospital-acquired COVID-19 before the LDH orders and, although two employees later tested positive, the LDH was not aware of their positive test results or any connection with the Hospital when issuing the orders; and (3) no LDH order required the Hospital to clean-up, remove, restore or replace any contaminated property and the Hospital employed the same cleaning procedures both before and after the LDH Orders.  ECF No. 37-1 at 9-11, 23-33.

In contrast, the Hospital argued that the LDH's orders triggered the policy's business interruption coverage because (a) the Policy does not require the LDH to issue its order after an outbreak of COVID-19 at the Hospital, with actual knowledge of the details of the Hospital outbreak, in direct response to the outbreak and specifically declaring that an outbreak occurred at the Hospital, (b) LDH was aware that the Hospital (like all Louisiana hospitals) was treating COVID-19 patients in formulating its orders suspending non-emergency procedures and treatments and the Hospital had two employees test positive, (c) the LDH orders suspending non-emergent care were directed to all Louisiana hospitals, which necessarily included the Hospital, and (d) the Hospital was in the middle of the COVID-19 outbreak.  ECF No. 39-2 at 3-6, 12-25.

After thoroughly reviewing the evidence provided by the parties and arguments raised on cross motions for summary judgment, the Court denied the Hospital's motion and granted Hartford's motion.  ECF No. 58.  Judge Papillion then entered judgment in favor of Hartford and against the Hospital, dismissing the case.  ECF No. 59.

## II.    STANDARD FOR RECONSIDERATION

The Hospital now asks this Court to reconsider its decision and deny Hartford's summary judgment motion, arguing that the court considered disputed facts as undisputed, failed to consider

2

record evidence contrary to Hartford's arguments, and misunderstood partial witness testimony without proper context. ECF No. 60; No. 60-1. Hartford opposes the motion and argues that the Hospital simply seeks a do-over, which is improper after the court extensively and carefully considered all of the evidence presented on the original motions and simply rejected the Hospital's arguments. ECF No. 65. In Reply, the Hospital argues that Hartford improperly asks the court to weigh or discount evidence rather than consider all of the evidence without making credibility determinations or weighing same. It then argues that the record evidence establishes material factual disputes that preclude summary judgment. ECF No. 66.

The Hospital invokes Federal Rule of Civil Procedure 59(e).[1] While the Federal Rules of Civil Procedure do not provide specifically for motions for reconsideration,[2] Rule 59(e) permits a party to seek alteration or amendment of a final judgment for the "narrow purpose" of correcting manifest errors of law or to present newly discovered evidence.[3] Rule 59(e) motions, however, are not the proper vehicle for rehashing evidence, legal theories, or arguments,[4] nor should they be used to raise arguments that could have and should have been made before entry of an order or to re-urge matters that have already been advanced by a party.[5] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[6]

Courts consider four factors in deciding a motion to reconsider under Rule 59(e). Whether (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is

---

[1] ECF No. 60-1 at 1,
[2] *Cressionnie v. Hample*, 184 F. App'x 366, 369 (5th Cir. 2006); *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004).
[3] FED. R. CIV. P. 59(e); *Anderson v. Martco L.L.C.,* 852 F. App'x 858, 859 (5th Cir. 2021) (per curiam) (citing *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004)).
[4] *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).
[5] *See Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990).
[6] *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002).

based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.[7]

In support of its motion, the Hospital attaches new evidence not previously made part of the record. To determine whether to grant a Rule 59(e) motion based on newly presented evidence, the court must consider (1) the probative value of the evidence; (2) whether the evidence was available to the movant at the time of the summary judgment motion; (3) the reason that the movant did not present the evidence before summary judgment was granted; and (4) potential prejudice to the nonmovant.[8] "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."[9]

### III.   ANALYSIS

The Hospital alleges that reconsideration is necessary because the Court's reasons for judgment are based on "several manifestly erroneous factual misunderstandings." ECF No. 60-1 at 6. To support this position, the Hospital attaches new evidence reflecting certain employee's positive COVID test results, workers' compensation claims and benefits for infections that occurred in March 2020, as well as additional deposition excerpts. It asserts that these records are provided for "additional context" and are not necessary to grant its motion. *Id.* at 10.

#### A.  Manifest Error of Law or Fact

The Hospital argues that the Court's Order and Reasons reflect multiple "manifestly erroneous factual misunderstandings" warranting reconsideration. It contends that, had the court

---

[7] *Gulf Island Shipyards, LLC v. LaShip, LLC,* No. 22-154, 2024 WL 1794361, at *3 (E.D. La. Apr. 25, 2024) (Fallon, J.) (citing *Henry v. New Orleans La. Saints, L.L.C.,* No. 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016)).
[8] *Luig v. North Bay Enters., Inc.,* 817 F.3d 901, 906 (5th Cir. 2021) (citing *Templet v. HydroChem, Inc.* 367 F.3d 473, 477 (5th Cir. 2004) (internal citation omitted)).
[9] *Templet*, 367 F.3d at 479.

4

considered "the full ambit of facts," including the evidence listed below, the Court would not have granted summary judgment in Hartford's favor, or at least would have determined that a factual issue precluded summary judgment. ECF No. 60-1 at 6.

1. **Hartford's Exhibit 29: COVID-19 Test Results of Hospital Employees**

The Hospital contends that the Court overlooked or misunderstood record evidence establishing that Hospital employees acquired COVID-19 at the facility during March 2020 by pointing to Hartford's Exhibit 29, "COVID-19 Test Results of TGMC Employees" (ECF No. 37-7). ECF No. 60-1 at 7. This Exhibit, however, contains only one positive test result accompanied by a statement that the employee was exposed at the facility.[10] Even the Hospital conceded that an "outbreak" would require evidence that at least two individuals acquired the disease *at the facility*, not simply that employees of the Hospital tested positive for COVID-19 during the relevant time period.[11] At best, through this exhibit, the Hospital identifies one employee who acquired COVID-19 at its facility in March 2020.

2. **Dr. Stock's Supplemental Report**

Again referencing the medical records contained in Hartford's Exhibit 29, the Hospital alleges that the supplemental report of Hartford's epidemiology expert Dr. Stock constitutes evidence of an outbreak at its facility because Dr. Stock "admits" at least two Hospital employees tested positive for COVID in March 2020. ECF No. 60-1 at 7-8. It further contends that Hartford "selectively omitted" additional medical records relied on by Dr. Stock, who "ignored" six of the eight employees who tested positive in her report. The Hospital "provides these records with [its

---

[10] *See* ECF No. 37-37 at 9.
[11] *See* ECF No. 60-1 at 18.

5

current] motion to inform the Court more fully of the basis of Hartford's submissions and argument." *Id*. at 8.

Of course, the weighing of expert testimony is inappropriate at the summary judgment phase,[12] and for that reason, the Court did not weigh the evidence when initially ruling.[13] Nor will the Court do so now. As before, the Court relies on the existence or absence of documentary evidence to determine whether the Hospital has created any genuine dispute of a material fact that would preclude summary judgment. Although the Hospital argues that Dr. Stock's report concedes that at least two Hospital employees tested positive for COVID-19 in March 2020, the report merely indicates that "there was no way to conclude from an epidemiological perspective that there had been an 'outbreak' of COVID-19 at the Hospital" and that there is "insufficient information that demonstrates that the LDH was aware of two or more cases of Hospital-acquired COVID-19 before issuing the March 2020 LDH orders." Even if Dr. Stock had made such a concession, however, the operative question is not whether two or more Hospital employees tested positive for COVID in March 2020 but whether two or more individuals acquired COVID-19 *at the facility.*

To the extent that the Hospital seeks reconsideration based on Hartford's "selective omission" of certain test results, the Hospital has not articulated any basis for its failure to identify that omission or supply the missing test results as part of its initial response. For the reasons discussed more fully below, the Court cannot now consider the Hospital's additional medical record evidence because those documents were readily available to the Hospital before the initial ruling.

---

[12] *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.,* 922 F.2d 220, 223 (5th Cir. 1991) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).
[13] Plaintiff's argument that the court improperly weighed record evidence at the summary judgment stage by use of the word "established" falls short. The court found that Plaintiff did not provide sufficient evidence to establish the existence of a genuine dispute of material fact, not that the evidence provided by Plaintiff failed to meet its evidentiary burden.

### 3. Dr. Hassig's Report

The Hospital contends that Dr. Hassig's report "established" certain facts, including that the Hospital "had multiple personnel infected (8 total in March 2020)."[14] Dr. Hassig's report notes that the first hospital employee to become symptomatic with COVID-19 presented on March 16, 2020, with another becoming symptomatic on March 17, 2020, and both employees were tested on March 17, 2020, one day before the first LDH Order.

Critically, neither Dr. Hassig's report nor any evidence offered by the Hospital addresses whether any such employees were infected at the facility or even whether the employee worked a shift during the relevant time period. The properly supported summary judgment placed the burden on the Hospital to come forward with evidence necessary to create a dispute of material fact, not simply identify a potential fact dispute. The Hospital failed to carry that burden to present such evidence.

### 4. LDH's Knowledge of COVID-19 Cases at the Hospital

The Hospital contends that the Court misunderstood evidence regarding LDH's knowledge of COVID-19 cases at its facility in March 2020, and thus, reached erroneous fact conclusions. Specifically, it asserts that the Court erroneously concluded that (1) no LDH order specifically focused on COVID-19 cases at the Hospital, (2) LDH officials were not aware of a COVID-19 outbreak at the hospital, and (3) the LDH orders were not issued in response to a reported outbreak of COVID-19 at the Hospital. ECF No. 60-1 at 10-11. Citing the testimony of Dr. Jimmy Guidry, the state health officer tasked with issuing the relevant LDH orders, the Hospital argues that Dr.

---

[14] ECF No. 60-1 at 9 & n.37 (citing ECF No. 39-30 at 5).

Guidry "had personal knowledge that the Hospital was experiencing a COVID-19 outbreak when he formulated and issued the LDH orders." ECF No. 60-1 at 11.

Contrary to the Hospital's characterization, Dr. Guidry's actual testimony reflects otherwise. Indeed, while Dr. Guidry "was aware that all hospitals were dealing with the issue" of COVID-19, he explicitly made clear that he did not write the March 2020 orders "to address [the Hospital's] needs." ECF No. 39-9 at 15. Nor did Dr. Guidry testify that he had knowledge of an outbreak of the virus at the Hospital. While Dr. Guidry's orders were "applicable" to all healthcare facilities in the state, the operative question is whether the orders were issued in response to an outbreak at the Hospital specifically, and nothing Dr. Guidry said supports that conclusion. Likewise, Hospital Infectious Disease Control Manager Charlotte Boudreaux simply testified that the Hospital reported to LDH the "number of COVID patients [it] actually had in house" on a given day, not any information reflecting that COVID-19 was spreading throughout the hospital. ECF No. 39-3 at 5.

5. **"Hospital-Acquired Infections"**

The Hospital suggests that Hartford misled the Court by presenting only a partial excerpt of Charlotte Boudreaux's deposition testimony regarding "hospital acquired" COVID-19 that excludes the narrow definition of "hospital acquired." ECF No. 60-1 at 12. Notably, the Hospital fails to explain why it did not provide this additional context when the cross motions were taken under submission.

The Hospital's suggestion that it could not attach additional relevant deposition excerpts because of Judge Milazzo's directive limiting attachments to only the information cited in the pleadings (*id.* at 16) fails for several reasons. First, upon the consent of both parties, the

8

undersigned addressed the motions for summary judgment, not Judge Milazzo.[15] Any questions about whether the Court would allow additional documents could and should have been directed to the undersigned when the motions were referred. Even if the parties were operating under the mistaken impression that this Court likewise employed such limitations, the language in Judge Milazzo's standard order merely counsels that "[t]he parties should ONLY submit pertinent pages of deposition transcripts" and that "[s]ubmission of an entire transcript will not be accepted without prior leave of Court." If these additional deposition pages were relevant, the Hospital certainly could have submitted the pertinent pages to make their point that Hartford omitted material information. This argument is wholly without merit.

### B. New Evidence

To determine whether to grant a Rule 59(e) motion in the face of newly presented evidence, the court must consider (1) the probative value of the evidence; (2) whether the evidence was available to the movant at the time of the summary judgment motion; (3) the reason that the movant did not present the evidence before summary judgment was granted; and (4) potential prejudice to the nonmovant.[16] "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."[17]

The Hospital attaches three exhibits to its motion for reconsideration.

### 1. Exhibits A and B

Exhibit A (ECF No. 60-2) contains medical records purportedly relied upon by Hartford's epidemiology expert Dr. Stock, which records Hartford allegedly "selectively omitted" from its

---

[15] Moreover, this action was reassigned to Judge Papillion on June 22, 2023. ECF No. 38.
[16] *Luig v. North Bay Enters., Inc.,* 817 F.3d 901, 906 (5th Cir. 2021) (citing *Templet,* 367 F.3d at 477).
[17] *Templet*, 367 F.3d at 479.

filings. ECF No. 60-1 at 8. Exhibit B (ECF No. 60-3) consists of certain Hospital employee's workers' compensation records.

Exhibit A identifies two employees ("Employee 1" and "Employee 3") who tested positive and "explicitly linked their exposure to working with COVID patients at the Hospital." *Id*. The other six employees' records made no reference to exposure at the Hospital:

| **Employee** | **Reference to Exposure at the Facility** | **Test Specimen Collected** | **Results Received** |
|---|---|---|---|
| Employee 1 | "[I]]ndicated he did an EKG procedure on a possible COVID-19 patient." | March 17, 2020 | March 18, 2020 |
| Employee 2 | None | March 17, 2020 | March 21, 2020 |
| Employee 3 | "Pt is a mobility tech in the CCU at this hospital and exposed to a Covid19 (+) patient" | March 23, 2020 ("[R]esult communicated to the Region 3 OPH… on 03/26/2020.") | March 26, 2020 |
| Employee 4 | None | March 22, 2020 | March 22, 2020 |
| Employee 5 | None | March 26, 2020 | March 27, 2020 |
| Employee 6 | None | March 28, 2020 | March 31, 2020 |
| Employee 7 | None | March 31, 2020 | April 1, 2020 |
| Employee 8 | None | March 25, 2020 | March 25, 2020 |

ECF No. 60-2.  Of these eight employees, only the first two were tested before the LDH's March 18, 2020 and March 21, 2020 orders.  Of those two employees, only one indicates exposure to a "possible COVID-19 patient" with a result received before issuance of the LDH orders.  The other employee's result was received on the same day as LDH's second order, and that employee specifically denied hospital contact with a COVID patient.  ECF No. 60-2 at 9.  Thus, the LDH's March 2020 orders could not have been issued in response to an "outbreak" at the facility.  Exhibit A, therefore, does not create a genuine dispute of material fact regarding the existence of either an outbreak or LDH's issuance of an order in response to same as necessary to preclude summary judgment on the issue of whether LDH issued its March 2020 orders in response to an outbreak of COVID-19 at the Hospital.

Exhibit B (ECF No. 60-3) consists of workers' compensation records for six Hospital employees reflecting:

| Employee | Date(s) of Exposure | Date Positive Result Received | First Day Out |
|---|---|---|---|
| Laquesha Jones | March 27, 2020 | Not provided | April 12, 2020 |
| Nicole Lecompte | March 17, 2020; March 23, 2020; March 25, 2020; March 28, 2020; March 31, 2020; April 1, 2020; April 2, 2020; April 4, 2020; April 6, 2020; April 14, 2020 | Not provided | April 14, 2020 |
| Angelle Lyons | March 28, 2020 | Not provided | April 2, 2020 |
| Abbegayle MacNamara | March 31, 2020 | Not provided | April 1, 2020 |
| Paul Naquin | March 30, 2020 | Not provided | April 3, 2020 |
| Brent Ragas | March 26, 2020 | Not provided | April 1, 2020 |

11

ECF No. 60-3. Like Exhibit A, Exhibit B fails to create a genuine issue of material fact for several reasons. First, this document reflects only one employee's claim with an exposure date before the relevant LDH Orders. The exhibit, however, fails to indicate when either the Hospital or LDH was made aware of that result. In addition, none of the employees (including the one with the March 17 exposure date) actually missed work in March 2020. For these reasons, the Hospital's demonstration that it had one positive COVID employee before the March 18 and 21 LDH orders does not create a genuine dispute regarding whether the Hospital had a COVID "outbreak" at its facility before the LDH's orders of March 18 and 21.

Even if these new exhibits were sufficient to create a material fact dispute, the Hospital has not justified its total failure to provide this evidence with its initial Opposition. Indeed, while alleging that Hartford "selectively omitted" these records, the Hospital offers no explanation of why it chose not to direct the court's attention to them in a timely manner. Nor does the Hospital suggest that either Exhibits A or B was previously unavailable.

2. **Exhibit C**

Exhibit C contains additional pages of Charlotte Boudreaux's deposition transcript that the Hospital failed to submit with the cross-motions for summary judgment. The Hospital introduces this exhibit to demonstrate that Boudreaux confirmed that the Hospital had no "hospital-acquired" COVID-19 cases in March 2020 based on a narrow definition of "hospital-acquired." As the Hospital itself acknowledges, however, this technical definition was previously established by the Hospital's own excerpts from Boudreaux's deposition:

> Q: Okay. Now Ms. Gordon asked a lot of questions about this idea, this concept, of hospital-acquired COVID.· And I want to be -- make sure I understand, and that if you testified that the judge understands. Is hospital-acquired COVID the same thing as someone being infected at the hospital with COVID?
>
> A: No.

12

> Q: What's the difference?
>
> A: So, if -- the patient can come in with COVID and they are not considered hospital acquired. Hospital acquired would mean they had been in our facility for an extended period of time, 7 and it was over the number of days that the definition met that we… would classify it as hospital acquired. Now whether it was specifically hospital-acquired or from a visitor, we -- we have no way of isolating who it was acquired from.

ECF No. 39-3 at 21-22.  Neither this evidence, nor any other evidence presented by the Hospital, creates a genuine dispute of material fact regarding whether the Hospital experienced a COVID-19 outbreak at its facility in March 2020 or that the LDH issued its March 18 and 21 orders in response to such outbreak.

### IV.    **CONCLUSION**

The Court considered all of the evidence in ruling on summary judgment.  Even considering the Hospital's new evidence offered on this motion, nothing presented alters my conclusion that the Hospital has failed to provide evidence that creates a genuine dispute regarding a material fact (i.e., whether there was either an "outbreak" of COVID-19 "at the facility" before the LDH issued its orders in March 2020 or whether any governmental order was issued regarding or concerning such an outbreak). The Hospital's failure to identify a manifest error of law or fact, newly discovered evidence, the necessity to correct manifest injustice, or an intervening change in the controlling law dooms its request for reconsideration.  Accordingly, for the foregoing reasons,

IT IS ORDERED that the Hospital Service District No. 1 of Terrebonne Parish's Motion to Reconsider, Alter or Amend Judgment (ECF No. 60) is DENIED.

New Orleans, Louisiana, this ___14th___ day of May, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

13